IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 15-cr-00466-RM

UNITED STATES OF AMERICA,

        Plaintiff,

v.

KIMBERLY S. CILENO,

        Defendant.

## PLEA AGREEMENT

The United States of America, by and through Martha A. Paluch, Assistant United States Attorney for the District of Colorado, and the Defendant, Kimberly S. Cileno, personally and by counsel, Natalie Stricklin, hereby submit the following Plea Agreement and Statement of Facts Relevant to Sentencing pursuant to D.C.COLO.LCrR 11.1.

### I. PLEA AGREEMENT

The defendant agrees to plead guilty to Count 3 of the Indictment, charging a violation of 18 U.S.C. § 1347, Health Care Fraud. The defendant agrees to pay restitution to former EZ Flex, Inc. clients in an amount to be determined at sentencing. The defendant also admits the forfeiture allegation as set forth in the Indictment and agrees that the forfeiture described therein is not excessive.

Court's Exhibit 1

The defendant agrees and understands pursuant to Title 29, United States Code, Sections 504 and 1111, her convictions in this case will prohibit her from directly or indirectly participating in the affairs of any labor organization or employee benefit plan for the period of thirteen years after conviction or after the end of incarceration whichever is later.  Defendant further agrees and understands if she violates this prohibition, she may be punished by imprisonment for up to five years and a fine of up to $10,000.

In exchange, the United States Attorney's Office for the District of Colorado ("the government") agrees to move at sentencing for dismissal of the remaining counts in the Indictment.  The government also agrees to not file any additional charges against the defendant based on the information presently known to the government.

Provided the defendant does nothing inconsistent with accepting responsibility between the date of her [his crossed out] plea and the date of sentencing, the government will recommend that the defendant receive the maximum reduction for acceptance of responsibility.

The government will determine its position with respect to any argument that the defendant advances in support of a sentence at variance with a sentence within the applicable sentencing guideline range, and will take a position with respect to such arguments, at the time of sentencing.  At minimum, the government agrees it will not seek a sentence above the bottom of the applicable guideline range.

This agreement is submitted to the Court for its consideration pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure.

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction; (2) the sentence exceeds the advisory guideline range that applies to a total offense level of 17; or (3) the government appeals the sentence imposed. If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

## II.     ELEMENTS OF THE OFFENSE

In order to be convicted of a violation of 18 U.S.C. § 1347, Health Care Fraud, the following elements would have to be proven by the government beyond a reasonable doubt:

*First:* the defendant devised and executed or attempted to execute a scheme or artifice to defraud a health care benefit program;

*Second:* the defendant acted knowingly and willfully with the intent to defraud, meaning that the defendant acted with knowledge that her conduct was unlawful; and

*Third:* the scheme to defraud employed material false pretenses, representations, or promises.

United States v. Rufai, 732 F.3d 1175, 1189 (10th Cir. 2013); United States v. Franklin-El, 555 F.3d 1115, 1122 (10th Cir. 2009).

## III.   STATUTORY PENALTIES

The maximum statutory penalty for a conviction of Title 18, United States Code, Section 1347, is as follows:  not more than 10 years of punishment; a fine of not more than twice the financial gain determined at sentencing, or both; not more than 3 years of supervised release; and a $100 special assessment fee.   If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

## IV.   COLLATERAL CONSEQUENCES

The conviction may further cause the loss of certain civil rights, including, but not limited to, the right to possess a firearm, vote, hold elected office, and sit on a jury.

## V.   STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory

-4-

guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree that the date on which relevant conduct began was in January 2011.

At that time, the defendant resided in Thornton, Colorado, and was the owner and operator of EZ Flex, Inc. EZ Flex was a third-party administrator of cafeteria plans, also known as flexible spending plans.

The cafeteria plans operated in the following manner: at the start of each year, participants committed to fund their plans in amounts they chose by way of pre-tax payroll deductions up to a maximum amount established by the Internal Revenue Service (IRS). Deductions were generally made on a per-pay-period basis and forwarded by participants' employers either monthly or by pay period to a third-party administrator such as EZ Flex. Throughout the year, participants accrued reimbursable claims for which they submitted documentary proof in order to be reimbursed by the

third-party administrator. Eligible expenses, referred to as "qualified benefits" by the IRS, typically include health, dental, and dependent care costs, among others.

The IRS required that third-party administrators of cafeteria plans return to employers any unused funds at the end of the designated time period.

Approximately 36 employers hired the defendant to administer the cafeteria plans they offered to a total of over 500 employees (hereinafter participants). The employers forwarded the designated deductions to the defendant, and the participants submitted claims for reimbursement of eligible expenses directly to the defendant. The defendant paid these claims by check or made direct deposits into the respective participant's bank account. The defendant also offered debit cards to participants for reimbursement of claims for an additional fee.

Certain employers established trust accounts, and their employees' cafeteria plan deductions were deposited into those trust accounts. The defendant opened Wells Fargo Bank account number XXXXXX-8811, referred to as the "flex clearing account" or the "flex fund" (hereinafter flex account). The majority of cafeteria plan deductions were deposited into the flex account. Eligible cafeteria plan claims were to be paid from either the trust accounts or the flex account.

The defendant also opened Wells Fargo Bank account number XXXXXX-8803, referred to as the EZ Flex "operating account" (hereinafter operating account). This account essentially functioned as the defendant's personal checking account and was used for personal expenses.

On September 28, 2012, the Department of Labor's Employee Benefits Security Administration (EBSA), was contacted by Amcheck, a payroll and human resources administrator located in Denver. For years, Amcheck had recommended the services of EZ Flex to its clients looking to establish flexible spending plans for their employees. Amcheck itself contracted with EZ Flex for administration of its own flexible spending plan.

Amcheck reported that beginning in August 2012, Amcheck employees, as well as Amcheck clients, began reporting increasingly erratic claims administration by EZ Flex, Inc. Examples of this erratic behavior included reimbursements that were either paid in incorrect amounts or not paid at all, and a lack of responsiveness to clients via telephone or email.

Between January 12, 2011, and December 10, 2012, the defendant made online transfers from the flex and trust accounts into the operating account and spent that money on personal purchases, such as home renovations, a vacation, payments to Nutrisystem, and to a knife manufacturer. The defendant also withdrew cash from the flex account, wrote checks from the flex account for home improvements, and transferred money from the flex account to a relative's bank account.

The defendant converted over $200,000 of participants' cafeteria plan deductions for her own use, including amounts she was required to return to the employers.

When participants demanded explanations for erratic administration and unpaid claims, many received email responses from defendant's alleged coworker "Stacy," who

was purportedly helping the defendant run EZ Flex. The government asserts that the defendant created the persona of "Stacy" and email accounts in this name to insulate herself from participants' distress over unpaid claims and to conceal, or at least delay discovery of, her intentional misappropriation of their money.

Specifically, as alleged in Count 3, on June 3, 2011, the defendant knowingly and willfully withdrew $4,500 in cash from the EZ Flex flex account for her personal use in furtherance of the scheme to defraud EZ Flex clients as detailed above.

## VI. SENTENCING COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

A. The base offense level is 6 pursuant to § 2B1.1(a)(2).

B. There is a 10 level increase pursuant to § 2B1.1(b)(1)(F) (loss of more than $150,000 but less than $250,000). The parties are in dispute as to the exact amount of restitution and will present arguments on this issue at the time of sentencing.

C.  There is a two-level increase pursuant to § 2B1.1(b)(2)(A) because there are more than ten victims in this case.

D.  The government asserts that there is a two-level increase pursuant to § 3B1.3 because the defendant abused a position of private trust. The defendant will argue at sentencing that this enhancement does not apply.

E.  According to the government, the adjusted offense level is therefore 20.

F.  Pursuant to §3E1.1(a) and (b), provided the defendant does nothing inconsistent with accepting responsibility between the date of her plea and the date of sentencing, the defendant should receive the full three-level reduction for acceptance of responsibility. Under the government's calculation, the resulting total offense level would be 17.

G.  The parties understand that the defendant's criminal history computation is tentative. The criminal history category is ultimately determined by the Court. The information known to the parties shows that the defendant has no prior criminal history. The defendant's criminal history category is therefore tentatively estimated to be Category I.

H.  Assuming the tentative criminal history facts above are accurate, the career offender/criminal livelihood/armed career criminal adjustments do not apply.

I.  The guideline range resulting from the government's estimated total offense level of 17, and the tentative Criminal History Category I, is 24-30 months. However, in order to be as accurate as possible, with the criminal history category

        undetermined at this time, the estimated offense level could conceivably result in a range from 24 months (bottom of Category I) to 63 months (top of Category VI).

J.     Pursuant to guideline §5E1.2, assuming the government's estimated offense level of 17 is accurate, the fine range for this offense would be between $10,000 and $95,000, plus applicable interest and penalties.

K.     Pursuant to §5D1.2(a)(2), if the court imposes a term of supervised release, that term shall be at least one but not more than three years.

L.     The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

M.     The defendant agrees to pay restitution to the victims in the amounts determined at the time of sentencing.

N.     The defendant agrees that an order of forfeiture shall issue in the form of a money judgment in the amount of the proceeds determined at sentencing obtained by the defendant through the above-described scheme.

        No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary

entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

## VII.   ENTIRE AGREEMENT

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 6/7/16

Kimberly S. Cileno
Defendant

Date: 6/7/16

Natalie Stricklin
Attorney for Defendant

Date: 6/7/16

Martha A. Paluch
Assistant U.S. Attorney