IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  15-cr-00466-RM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

KIMBERLY S. CILENO,

    Defendant.

_____

**GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT (ECF 29) AND STATEMENT REGARDING LOSS (ECF 30)**
_____

    The United States of America, by and through Robert C. Troyer, Acting United States Attorney, and Assistant United States Attorney Martha A. Paluch, hereby submits this consolidated response to defendant's objections to the presentence report (PSI) (ECF 29) and her statement regarding loss (ECF 30).

    **Defendant's Objections to the PSI**

    Defendant raised two objections to the PSI which affect the guideline calculation in this case:  1) the loss amount; and 2) the abuse of trust enhancement.  ECF 29.  In support of her challenge to the loss amount, the defendant filed a Statement Regarding Loss, ECF 30.  The government responds to these arguments as follows:

    **I.   Loss amount**

        **Legal Standard**

    The United States must prove the amount of loss by a preponderance of the

1

evidence. *United States v. Griffith,* 584 F.3d 1004, 1011 (10th Cir. 2009). "[I]n the case of fraud or theft, the loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the information available." *United States v. Gallant,* 537 F.3d 1202, 1252 (10th Cir. 2008).

**Argument**

The government submits the most reasonable estimate of the amount of loss in this case is **$230,831.14**. Department of Labor Investigator Paula Musil will testify at the August 29, 2016 hearing that determination of the precise loss amount in this case was difficult, due in large part to the inability to obtain and review records maintained by the defendant. Investigator Musil will also testify 1) generally as to the documentation received from the employers of the plan participants to support the loss calculation, and 2) specifically, with respect to the loss sustained by the following two employers, to which the defendant objects:

**1. Rocky Vista University (RVU)**

RVU, a client of AmCheck, claimed they are due $44,709.69 in unpaid claims for the calendar year 2012, and an additional 1) $18,386 unused contributions that Cileno was required to return to RVU at the end of the 2011 plan year, called forfeited funds, and 2) $6,904.85 "run out money," which pertains to claims submitted during the grace period for 2012, typically from January to March of the year following the plan year. ECF 30-1 (March 18, 2016 email from human resources manager Ms. Patty Gordon of RVU setting forth RVU's losses). Defendant challenges the forfeited and "run out" amounts, asserting that RVU's claim for this amount is contrary to "the consistent

formula used by the government in calculating loss/restitution," which she asserts is amount "of unpaid claims" only. ECF 30 at 3. This is incorrect. The loss calculation, as alleged in the indictment and as agreed to by the defendant in her plea agreement, is the amount of unpaid claims and "amounts she was required to return to the employers," at the end of the plan year, which is the forfeited amounts. ECF 1 at 1-2; ECF 25 at 7.

In response to defendant's claim, Agent Musil contacted AmCheck and RVU again to confirm RVU's loss amount. AmCheck explained that $6,904.85 of "run out" funds was already captured in the $44,709.69 unpaid claim amount for plan year 2012. Once this was explained to RVU, they agreed with this calculation. Accordingly, defendant is correct that RVU is not entitled to any additional "run out" funds.

However, the Chief Operating Officer and Chief Financial Officer of RVU, Mr. Peter Freytag, has now advised he believes the Department of Labor "misunderstood' Ms. Gordon's March 18., 2016 email. Exhibit 1. He claims that the forfeited amount for the year 2011 should be in the $35,000 range. *See id.* Accepting the $35,000 amount of forfeited funds, RVU's loss would be $79,709.69 ($44,709.69 in unpaid claims plus $35,000 in forfeited funds).

However, given the lack of records from the defendant for the plan year 2011, Mr. Freytag claims RVU suffered a total loss of $200,534.29 for that year as a result of the defendant's actions. Mr. Freytag basis this amount on the total amount contributed to EZ Flex for the year 2011, which is $200,534.29. Mr. Freytag then states, "The burden of proof is on the defendant Kimberly Celino(sic)/EZ Flex, Inc. to prove to the

Court the amount which EZ Flex, Inc. paid out in claims for that same period." *Id.* Mr. Freytag asserts that because the defendant did not provide to RVU an accurate accounting of claims paid, it is "impossible for RVU to establish the claims paid by EZ Flex, Inc. or prove what EZ Flex, Inc. paid in claims to RVU participants in order to calculate the exact amount due to RVU." *Id.*

Undersigned counsel has explained to Mr. Freytag that it is the government's burden to prove the amount of loss by a preponderance of the evidence. Government counsel does not believe the appropriate measure of loss for RVU is the total amount of money paid by RVU to EZ Flex for the year 2011 ($200,534.29) as this calculation does not take into account the amount of claims actually paid by the defendant during that year.

While the government believes a reasonable estimate of RVU's loss is $79,709.69, it understands that under the Victims Rights and Restitution Act, a victim who "has suffered direct physical, emotional, or pecuniary hardship as a result of the commission of crime," is afforded certain rights, to include being heard at sentencing. 42 U.S.C. § 10607(e)(2)(A).

A representative of RVU will seek permission from the Court to speak at the defendant's sentencing hearing.

### 2. Standard Interiors

Defendant claims that Standard Interiors is due $2,654.37 in restitution and not the $3,109.60 Standard Interiors claims. ECF 30 at 4. Defendant provides no support for this assertion. Instead, the $3,109.60 figure comes from Standard Interiors' records,

4

attached hereto as Exhibit 2, which records were previously provided in discovery. In addition, in response to defendant's challenge to this loss amount, Investigator Musil contacted Mr. Randy Hempel of Standard Interiors again to confirm their loss amount, and the efforts Mr. Hempel took to ensure the accuracy of this loss amount are detailed in the attached memorandum, Exhibit 3. The government has proved Standard Interiors' $3,109.60 loss amount by a preponderance of the evidence, and defendant's objection to this amount should be denied.

**Defendant's Deposits**

The defendant claims the government's loss calculation should be reduced by $54,932.40, the amount of two deposits she made into her business account "prior to being accused of any criminal wrongdoing." ECF 30 at 4. Defendant claims her assertion is supported by Application Note 3(E) to § 2B1.1 which provides for a reduction in loss for amounts returned by the defendant prior to detection of the offense. This claim is quickly disposed of.

First, had the defendant *not* deposited certain of her own funds into the business account to cover participants' claims, the government would be seeking an additional $54,932.40 in loss. It only became necessary for the defendant to deposit these funds into the business account because she had spent plan participant funds on her own personal expenses.

Second, she only made these two deposits of personal funds *after* AmCheck, acting on behalf of a number of its clients, threatened to take legal action, to include filing a formal complaint with the Adams County District Attorney's Office, due to the

5

defendant's failure to respond to repeated emails from employers asking for their employees' money back, and "her **choosing** to hold onto fiduciary funds." Exhibit 4 at 4). Therefore, Application Note 3(E) to § 2B1.1 does not support her claims as she contends. *See id.* (loss reduced by amount returned to the victim "before the offense was discovered *by a victim* or government agency").

Accordingly, the defendant is not entitled to a credit of $54,932.40. Had she not stolen participant funds, she would not have had to make these two deposits. She has received credit for this amount by the government not seeking an additional $54,932.40 in loss.

### Conclusion

The government has proven the revised loss amount of **$230,831.14** by a preponderance of the evidence, and therefore, the 10-level enhancement to the defendant's base offense level for a loss of over $150,00 but less than $250,000 is warranted. ECF 35 at 5, ¶ 26.

**II.     Abuse of Trust Enhancement**

The defendant disputes application of the abuse of trust enhancement to her offense level, pursuant to § 3B1.3. This enhancement is appropriate if 1) "the person occupies a position of trust," and 2) "the position of trust was used to facilitate significantly the commission or concealment of the crime." *United States v. Spear,* 491 F.3d 1150, 1153 (10th Cir. 2007) (citations omitted). The defendant "contests that the scope of her employment qualifies as a 'position of trust.'" ECF 29 at 2. However, the Tenth Circuit has clarified that this enhancement "has little to do with *trustworthiness*

and everything to do with *authority* and *discretion."  Id.* at 1154 (emphasis in original).

As to the first element, Application Note 1 explains that this enhancement applies to someone who is "subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature." App. N. 1 § 3B1.3.  Along these lines, the defendant attempts to liken her position as the owner and operator of EZ Flex to the positions held by the defendants in *Spear* and *United States v. Edwards,* 325 F.3d 1184 10th Cir. 2003).  Her attempt fails.  The defendant in *Edwards*, an hourly wage employee in an accounting department, had no "authority to make substantial discretionary judgments regarding company revenues or expenses." 325 F.3d at 1187.  The defendant in *Spear*, a federal immigration employee who processed applications, "was no more or less responsible for office monies than the defendant in *Edwards*." 491 F.3d at 1159.

In contrast, 36 employers forwarded deductions from, collectively, over 500 plan participants' wages to the defendant, which funds were to be applied to eligible expenses under the flex plans.  ECF 25 at 5-6.  These plan participants were entirely dependent on the defendant to pay their claims.  As noted by the probation department, "[a]ny and all decision making authority for her company was held by the defendant." ECF 36 at A-2 (distinguishing this case from *Spears).*

Defendant tries to distance herself from the complete control she had over the plan participants' money by claiming it was up to the IRS to determine eligibility for claim payment.  ECF 29 at 4. Whether the claims submitted were for allowable expenses is not at issue in this case.  What is at issue is the defendant's "access to significant sums

7

of money from her clients' payroll deductions, and eventually funnel[ing] these funds to other accounts which she diverted to her own use."  ECF 36 at A-2.  As the defendant admits, "[a]s long as the service was an IRS determined qualified benefit and the employer had provided the contributions, Ms. Cileno was responsible for paying out the reimbursement."  ECF 29 at 4.  That is exactly correct, and that is exactly what this defendant *did not do.*  She did not pay the reimbursement; instead, she transferred the money to hers and her husband's bank accounts and spent the money on trips, home improvements, and other personal expenses.

Application Note 5 to § 3B1.3 provides examples of situations where application of this enhancement is warranted:  "[i]f the offense involved theft or embezzlement from an employee pension or welfare benefit plan and the defendant was a fiduciary of the benefit plan, an adjustment under this section for abuse of trust will apply."  App. N. 5 to § 3B1.3.  The flexible spending plans qualify as welfare benefit plans, pursuant to 29 U.S.C. 1002(1), and the defendant was a fiduciary of these plans as she had complete control over the funds that were supposed to be deposited into these plans.  The plan participants were at the complete mercy of this defendant to pay their claims.  *See United States v. Guidry,* 199 F.3d 1150, 1160 (10th Cir. 1999) ("the question of whether an individual occupied a position of trust is evaluated from the victim's perspective").

As to the second element, that "the position of trust was used to facilitate significantly the commission or concealment of the crime," *Spear,* 491 F.3d at 1153, the defendant admitted in her plea agreement that "[w]hen participants demanded explanations for erratic administration and unpaid claims, many received email

8

responses from defendant's alleged coworker 'Stacy' who was purportedly helping the defendant run EZ Flex." ECF 25 at 7-8. The government maintains, and the evidence supports, the conclusion that the defendant "created the persona of 'Stacy' and email accounts in this name to insulate herself from participants' distress over unpaid claims and to conceal, or at least delay discovery of, her intentional misappropriation of their money." *See* Exhibit 5 (the defendant's emails using the Stacy email address and providing excuses for the delay in payment); see *United States v. Trammel,* 133 F.3d 1343, 1347 (10th Cir. 1998) (after defendant spent the money entrusted to him, "he attempted to conceal his fraud by continuing to correspond with proposed annuitants and continuing to tell the investors they would receive their annuities as soon as the paperwork was completed").

Defendant's complete control over the plan participants' funds made her embezzlement of those funds difficult to detect. *See United States v. Koehn,* 74 F.3d 199, 201 (10th Cir. 1996) ('[t]he primary concern of § 3B1.3 is to penalize defendants who take advantage of a position that provides them freedom to commit or conceal a difficult-to-detect wrong"); *United States v. Vigil,* 998 F.Supp. 2d 1121, 1140 (D. N.M. 2014) (same).

Given the application notes and case law on this issue, the probation office had no difficulty in recommending application of this enhancement to the defendant's offense level, ECF 36 at A-1 to A-2, and the defendant's objection to this enhancement should be denied.

**August 29, 2016 Sentencing Hearing**

The government advises that representatives of two of the defendant's victims, AmCheck and Rocky Vista University, plan to attend the hearing and would like the opportunity to address the Court with respect to the harm caused by the defendant's conduct.

DATED this 22nd day of August, 2016.

ROBERT C. TROYER
Acting United States Attorney

*s/ Martha A. Paluch*
MARTHA A. PALUCH
Assistant U.S. Attorney
1225 17th Street Suite 700
Denver, CO  80202
Telephone 303-454-0100
Facsimile:  303-454-0402
Email:  Martha.paluch@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on this 22nd day of August, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

Ms. Natalie Stricklin
Assistant Federal Public Defender
Counsel for Kimberly S. Cileno
Natalie_Stricklin@fd.org

Ms. Melissa Roberts
United States Probation Officer
Melissa_Roberts@cod.uscourts.gov

                                                      *s/Mariah Tracy*
                                                      MARIAH TRACY
Legal Assistant
U.S. Attorney's Office
1225 17th St., Suite 700
Denver, CO  80202
Telephone:  (303) 454-0100
Fax:  (303) 454-0401
e-mail: Mariah.Tracy@usdoj.gov

11